IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTINA MILLER,

    Plaintiff,

  v.

RAVENSWOOD CITY UNIFIED SCHOOL DISTRICT,

    Defendant.

No. C 04-03569 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this action for discrimination, retaliation and sexual harassment, defendant moves for summary judgment. This order finds that defendant Ravenswood City Unified School District has shown that there are no material issues of triable fact in plaintiff's discrimination and retaliation claims. Plaintiff Christina Miller, however, has demonstrated that are triable issues of material fact with respect to her sexual-harassment claim. Ravenswood's motion for summary judgment is **GRANTED IN PART** as to Miller's employment-discrimination and retaliation claims and **DENIED IN PART** as to Miller's claim for sexual harassment.

## STATEMENT

On June 18, 2002, plaintiff was hired by defendant on a temporary, hourly basis to help with the district's Child Nutrition Service Program (De La Vega Decl. ¶ 3(a)). Shortly thereafter, Ravenswood announced its intention to hire a full-time, permanent employee for theposition of director of Child Nutrition Services (Miller Dep. 71–72). Miller applied for the

position and was hired as director (*id.* at 73–75). She testified that she considered the job with Ravenswood to be a challenge because she knew of auditing problems in the program and that the program was not in compliance with state regulations (*id.* at 75). Her employment as director began in August 2002, and Mack McClendon, her immediate supervisor, testified that she was subject to a twelve-month probationary term in which she could be terminated without cause (McClendon Decl. ¶ 2). Miller disagreed and testified that it was her understanding that she was hired for a one-year term with evaluations to occur after three months, six months, and nine months (Miller Decl. ¶ 8).

*Miller's Job Performance.*

Both Miller and Ravenswood agree that there were existing problems with the Child Nutrition Program at the time Miller was hired as director, and that Miller was hired to look into those problems and attempt to fix them (Miller Dep. 76). Miller also agrees that during her time as director, she did not bring the program into compliance (*id.* at 51).

After a few months in the director position, Miller's immediate supervisor Mack McClendon concluded that she was not adequately performing her job duties (McClendon Decl. ¶ 4). McClendon sent Miller several memoranda to point out the deficiencies in her work to help her do her duties (*ibid.*; Shupe Decl. Exh. X). Miller denied ever seeing these memoranda or hearing of dissatisfaction with her work by her supervisors. Neither party disputed that Miller never received a formal evaluation from any of her supervisors until shortly before her employment ended. By the end of February 2003, McClendon had concluded that Miller was not performing her duties and should be terminated (McClendon Decl. ¶ 5).

*Plaintiff's Allegations of Sexual Harassment and Disability Discrimination.*

Plaintiff testified that at the time she took the full-time position with the district, she knew of no problems in her workplace other than lack of compliance with state regulations and problems with auditing (Miller Dep. 76). Beginning with her permanent employment, McClendon "groped himself" in a suggestive manner in Miller's presence on a regular basis (Miller Dep. 28–30). Some time between June and August of 2002, he also made a comment about Miller's bra size or breast size (*id.* at 41–43). Miller also testified that McClendon

2

1   sabotaged her work and made her stay with him in his office for long periods of time (Miller
2   Decl. ¶ 11). Several times during her employment, Miller complained verbally about
3   McClendon's behavior to her co-workers and supervisors, including then-superintendent
4   Charlie Knight (Miller Dep. 30). Miller testified in her deposition that she never reported
5   McClendon's "sexually offensive behavior" in writing to Knight, nor did she make a formal
6   complaint (Miller Dep. 43). The only conduct by McClendon that Miller complained of in
7   writing was contained in a memorandum to human resources director Maria De La Vega, saying
8   that McClendon had pulled Miller from a meeting, had taken her out into a hallway, and had
9   yelled at her (Shupe Decl. Exh. V). McClendon acknowledged that this incident occurred
10  (McClendon Decl. ¶ 7).

11  When plaintiff applied for the position of full-time director, Ravenswood had an
12  officially-adopted policy prohibiting sexual harassment and gender discrimination (De La Vega
13  Decl. ¶ 3(d)). There was also an administrative regulation in place that provided each employee
14  with a procedure to make a complaint about sexual harassment and workplace discrimination
15  (*ibid.*). The policy and complaint forms were available at the district offices or by request
16  (*ibid.*). Miller never requested a form from the district or made a formal complaint to any
17  Ravenswood human resources employee (*ibid.*). Miller denied knowledge of any such policy.

18  On March 19, 2003, Miller fell from a broken chair while at work and injured her lower
19  back, left arm, and hip (Miller Dep. 201). She filed an employee-accident claim per district
20  procedures and a claim for worker's compensation benefits on the same day (Boyd Decl. Exh.
21  17). Her claim was processed through Keenan, Ravenswood's third-party adjusting company
22  (De La Vega Decl. ¶ 4–5). Despite this, Miller says that she never received compensation for
23  her disability claim (Miller Decl. ¶ 21). Miller stayed home from work for a few days but
24  returned on March 24, 2003 (Miller Dep. 201).

25  ***Circumstances Surrounding the End of Plaintiff's Employment.***

26  Floyd Gonella replaced Charlie Knight as district superintendent after a governing board
27  election in November 2002 (Knight Decl. ¶ 1). At the time, Gonella knew that the district was
28  having budgetary problems (Gonella Decl. ¶ 2). He directed the Ravenswood administration to

3

plan layoffs of employees, and district administrators gave notice to 30 district employees of the impending layoffs on or about March 15, 2003 (*ibid*.). One of these employees was Christina Miller (*ibid*.).

Prior to the giving notice of layoffs, McClendon presented his concerns over Miller's performance to Gonella. Gonella told McClendon that he would have to complete an evaluation of her performance before any action could be taken (*id*. at ¶ 4). He did so on March 21, 2003, and the next work day told Miller of his request that the Board terminate her employment (McClendon Decl.¶ 3). At the time of his recommendation, McClendon was not aware that she had made complaints of sexual harassment toward her and denies that her gender or disabled status motivated his terminating her employment (*id*. at ¶ 7).

Miller received a written copy of McClendon's notice of his intent to seek her termination with the board on March 25, 2003. Gonella declared that Miller signed a three-sentence memorandum of resignation in his presence in his office on March 27, 2003 (Gonella Decl. ¶ 4; Shupe Exh. U). In the same meeting, Gonella also agreed to extend Miller's date of resignation out an additional 30 days (*ibid*.). Miller disputes that she placed her signature on certain resignation documents, although a signature purporting to be hers is there (Miller Dep. 124–127, 137–139). Forgery is indicated, she says. This is for the jury to resolve. She also testified that she was on pain medication at the time of the meeting because of her injuries, and that she was upset because she believed she was being fired (*ibid*.). She further stated that she never met with Floyd Gonella on March 27, 2003, and that her last day of work at the district was March 26, 2003 (*id.* at ¶¶ 20–21).

Gonella and Ravenswood declined to hire a new person to fill Miller's former position of director. Instead, Ravenswood hired a consulting firm, Sodexho, to perform the director's and other district food-service employees' positions (Gonella Decl. ¶ 5).

***Proceedings To Date.***

Plaintiff filed this lawsuit on August 25, 2004, alleging tortious termination in violation of public policy, conspiracy, sexual harassment, emotional distress, retaliation and harassment, violation of California Labor Code 1102.5, defamation, disability discrimination, and fraud.

4

1  Defendant's motion to dismiss was granted on March 1, 2005, and as a result plaintiff filed an
2  amended complaint. After two amended complaints, one of which still alleged claims that had
3  been previously dismissed, only plaintiff's gender and disability discrimination claims,
4  retaliation claim, and sexual-harassment claim survive. Discovery is over and the trial date
5  looms large. Defendant has moved for summary judgment.

### DEFENDANT'S EVIDENTIARY OBJECTIONS

7  Defendant makes approximately ten pages of evidentiary objections to exhibits plaintiff
8  submitted with her opposition to the motion for summary judgment. Most of these objections
9  concern the declarations of Christina Miller and Sheila Arcara. In summary, defendant argues
10 that large portions of those declarations are either speculation, hearsay, or are irrelevant because
11 they relate to plaintiff's dismissed claims. These objections will be dealt as they figure into
12 plaintiff's arguments.

13 Defendants's last objection argues that assertions of fact by counsel in plaintiff's
14 opposition brief without citations to the record are not evidence and are merely speculation
15 under FRE 702. It is worthwhile to note here that plaintiff's opposition brief was due on
16 November 22, 2006, but was filed on November 27. Plaintiff asked for leave to file the brief
17 late and to resubmit the brief to correct typographical errors. Such leave was granted, however,
18 plaintiff never filed a revised copy of her brief. As a result, plaintiff makes a considerable
19 number of factual allegations in her brief without citation to any record.

20 As the law makes clear, it is the parties' responsibility to demonstrate the existence of
21 triable issues of fact by citing to the record. It is not the court's task "to scour the record in
22 search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1278 (9th Cir. 1996).
23 Assertions of fact that plaintiff makes in her opposition without identifying support will not be
24 considered facts upon which a genuine issue can be shown. Defendant's objection as to that
25 portion of the brief is **SUSTAINED**.

### ANALYSIS

27 Ravenswood now moves for summary judgment as to each of Miller's three remaining
28 claims for discrimination under Title VII, retaliation, and sexual harassment. In her briefs,

5

Miller presents very little if any argument or evidence in opposition to defendants' motion as to her discrimination and retaliation claims. Instead, she devotes most of her time to arguing her sexual-harassment claim. Even so, this order still reaches the merits of her discrimination and retaliation claims.

Summary judgment should be granted where the pleadings, discovery, and affidavits show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023–24 (9th Cir. 2004). Once the moving party has met its initial burden, the nonmoving party must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citation omitted).

In the Ninth Circuit, "there is a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). "'[W]e require very little evidence to survive summary judgment' in a discrimination case, because the ultimate question is one that can only be resolved through a 'searching inquiry' – one that is most appropriately conducted by the factfinder, upon a full record.'" *Ibid.* (quoting *Lam v. University of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994)).

**1. GENDER AND DISABILITY DISCRIMINATION.**

Miller first alleged that Ravenswood terminated her employment because of her gender or her disabled status from her work injury. Plaintiff's gender-discrimination claims under Title VII survive, while her gender-discrimination claims under California state law were dismissed in an earlier order. In her opposition brief, plaintiff effectively concedes this claim because she does not argue against defendant's motion. Title VII discrimination claims are analyzed under a burden-shifting analysis. The plaintiff has the initial burden of showing a prime facie case of

6

discrimination. The burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the action. Plaintiff may then show that the employer's reason is pretextual; if plaintiff does this, the only thing she need prove is discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805 (1973).

### A.    **Prima Facie Case.**

To establish a prima facie case of discrimination under Title VII, the plaintiff is required to show that:

> (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably.

*Bergene v. Salt River Project Agr. Imp. and Power Dist.*, 272 F.3d 1136, 1140 (9th Cir. 2001).

As a woman, plaintiff belongs to a protected class. Defendant does not dispute this issue.

### (1)    *Performance*.

Plaintiff presents evidence that she never heard of complaints about her job performance as evidence that her work was satisfactory. Both parties agree that she was never given a formal evaluation until shortly before her employment ended. She also presents the deposition of Charlie Knight, McClendon's immediate supervisor, who testified that she never heard any complaints about Miller's performance from McClendon, and that she never reviewed any performance reports, positive or negative, regarding Miller's performance. This order assumes that Miller has met her prima facie burden.

In response, defendant presents the declaration of Mack McClendon that a few months after Miller started as a full-time employee, he concluded that she was not properly performing her duties. Additionally, McClendon stated that he presented Miller with a memorandum describing his dissatisfaction with her performance. Later, after discussing Miller's termination with Floyd Gonella, he submitted a performance evaluation to him. Both parties agreed that Miller did not bring the district's child-nutrition program into compliance with state regulations.

7

1  Viewed in the light most favorable to plaintiff, defendant has not excluded the
2  possibility that no reasonable trier of fact could determine that plaintiff's job performance was
3  satisfactory. Thus, this order assumes there exists a genuine of fact on this issue.

### (2) *Adverse Employment Action.*

Miller argues that she was fired and did not resign from her position as manager of the district's child-nutrition program. Specifically, she testified that when she met with McClendon to receive her job evaluation on March 26, 2003, it was her understanding that her position had been terminated. Neither party disputes that Miller had already received notice from the district that she would be laid off in the coming months.

In response, defendant admits that the district was planning on firing her, and that McClendon had recommended her for termination. Defendant then presents evidence that Miller resigned on March 27, 2003. Floyd Gonella testified that Miller signed a memorandum of resignation during a meeting with him on that day. The memorandum was three sentences in length and stated that Miller was resigning from the position of director and that her last day of work would be May 1, 2003. Gonella also testified that Miller signed a human-resources form indicating that she had resigned. Miller denied ever attending this meeting and testified that her last work day at the district was March 26, 2003.

In her deposition, Miller testified that the signatures on the memorandum and the human-resources form were hers, but that she did not sign either of them. She testified that she did not recall seeing or signing those documents because she was on painkillers at the time McClendon presented her with the documents at her evaluation. In her declaration, plaintiff presented a theory of how her signature was on the documents. She stated, without any corroborating evidence, that McClendon had forged her signature.

Viewing the facts in the light most favorable to the plaintiff, as this order must, there exists a triable issue as to whether plaintiff was fired or resigned. Thus, there is a triable issue of fact as to whether an adverse employment action was taken against her. Plaintiff argues in the alternative that she was constructively discharged, but presents no evidence in support. Because this order finds that there is a triable issue of fact, this argument need not be reached.

8

### (3) *Treatment of Other Employees.*

Miller does not specifically identify other employees who were treated differently than she was, but she did testify that no other employees were forced by McClendon to work such late hours and spend large amounts of time in his office. She also alleges without support that Michael Billingsley, another district employee, replaced her, and not the consulting company as the district had said. In response, the district does not present evidence that other employees were treated in a similar manner to Miller, nor does Ravenswood argue that she did not make out her prima facie case. Ravenswood merely stated that she was replaced by the consulting company. Viewed in the light most favorable to plaintiff, the district has not eliminated a triable issue of fact as to whether other similarly-situated employees were treated differently.

### B. Employer's Legitimate, Nondiscriminatory Reason.

Because plaintiff has made a showing of prima facie case, the burden of production shifts to Ravenswood to show that Miller was terminated for a legitimate, nondiscriminatory reason. *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 658 (9th Cir. 2002).

Ravenswood presents the declaration of Floyd Gonella to show that the district was having financial difficulties at the time Miller's employment ended and that he had recommended laying off about 30 district employees. Additionally, after Miller left Ravenswood, the district hired a consulting company to perform her job.

In response, Miller does not present any admissible evidence that the district ended her employment for any other reason. She mentions in her brief that she was actually replaced by Billingsley, another district employee, but again, points to no support in the record to back up her contention. Thus, Ravenswood has met its burden of showing a legitimate, nondiscriminatory reason for ending Miller's employment and that no genuine issue of fact remains on that issue.

### C. Pretext.

To defeat defendant's motion for summary judgment, plaintiff must now come forward with evidence showing that Ravenswood's proffered reason was merely pretextual. "[A] plaintiff at the pretext stage must produce evidence in addition to that which was sufficient for

9

1 her prima facie case in order to rebut the defendant's showing." *Godwin v. Hunt Wesson, Inc.*,
2 150 F.3d 1217, 1220 (9th Cir. 1998). "When plaintiff offers direct evidence of discriminatory
3 motive, a triable issue of as to the actual motivation of the employer is created even if the
4 evidence is not substantial." *Id*. at 1221. Plaintiff can also prove pretext "indirectly, by
5 showing that the employer's proffered explanation is 'unworthy of credence because it is
6 internally inconsistent or otherwise not believable." *Raad v. Fairbanks North Star Borough*
7 *School Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) (internal citation omitted). When at the
8 summary-judgment stage, "one draws all permissible inferences in favor of the nonmoving
9 party." *Id*. at 1194.

10 The bulk of plaintiff's contentions as to pretext seem to relate to her whistle-blower-
11 retaliation claims. She asserts in her opposition brief, without citing to evidence, that she was
12 fired because she spoke out against McClendon's alleged misappropriation of district funds and
13 resources. These arguments have no credence because Miller's whistle-blower claims were
14 dismissed long ago in the history of this case.

15 In her opposition, plaintiff seems to abandon this claim by devoting most of her brief to
16 arguing her sexual-harassment claim. When asked at oral argument to show evidence in the
17 record of discrimination, counsel pointed to a section of Miller's declaration which contains
18 little more than a description of the events surrounding Miller's injuries and Miller's statements
19 that she was fired and did not resign. At most, Miller has shown that she was denied disability
20 benefits and was fired. There is clearly a triable issue of fact as to whether she was fired, but
21 she has shown no evidence that connects these events to discrimination either on the basis of
22 her gender or her disabled status.

23 Nor does plaintiff show that Ravenswood's motives of budget cuts and a decision to
24 staff the food-service department differently are not believable or unworthy of credence. She
25 merely alleged that those were not the real reasons why she was terminated. In her declaration,
26 she stated that she was fired in retaliation by McClendon. She offers no support, other than her
27 own speculation, that this was true. This portion of Miller's declaration is not admissible, as it
28 is speculation. Plaintiff also argues that she was fired out of discriminatory motive because her

10

work injury rendered her disabled. Again, she never presents any evidence of this, other than her own bare, unsupported conclusion.

Even viewing the evidence in the light most favorable to the plaintiff, she has not shown that she was fired from any pretextual motive. Plaintiff's claim fails, thus summary judgment for the defendant is **GRANTED** as to plaintiff's discrimination claim; this claim must be **DISMISSED**.

### 2. RETALIATION.

Plaintiff's second claim alleged that she was terminated because she complained of gender discrimination, based on complaints of sexual harassment, and disability discrimination related to her work-related injuries. To establish a prima facie case of retaliation, plaintiff must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." *Raad*, 323 F.3d at 1196–1197. If plaintiff establishes a prima facie case, then the burden shifting scheme as articulated in *McDonnell* applies. *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003).

"Protected activity includes the filing of a charge or a complaint, providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to oppose an employer's discriminatory practices." Plaintiff must also make some showing that would allow a reasonable trier of fact to infer that defendant was aware that the plaintiff had engaged in protected activity. *Raad*, 323 F.3d at 1197.

To establish a prima facie case, plaintiff would have to make a showing that she engaged in protected activity related to the alleged sexual harassment or discrimination because of her alleged disability. As with her discrimination claim, plaintiff concedes this claim in her briefs and arguments. Plaintiff never presents evidence showing that she made a complaint about discrimination based on her disability. Plaintiff did declare that she never received disability benefits. Filing a claim for disability benefits, however, is not protected conduct, it does not oppose a discriminatory practice. Additionally, she makes no showing that she ever told anyone that she felt she was being discriminated against because of her injuries.

11

Plaintiff does present some evidence that she "complained" of McClendon's conduct toward her. She complained verbally to some of her coworkers and to then-superintendent Charlie Knight. Miller admitted that she never made a formal complaint and never complained in writing. However, McClendon testified, and plaintiff never refuted, that McClendon was unaware that Miller had ever made a complaint that he was sexually harassing her. Even though McClendon did not know of Miller's complaints, there exists a triable issue of fact as to whether Knight knew of them. Thus, there is a genuine issue of fact as to whether Miller engaged in protected conduct.

As mentioned above, plaintiff has shown that there is a genuine issue of material fact as to whether she suffered an adverse employment action. More specifically, a reasonable jury could conclude that Miller was fired.

As to causation, however, plaintiff does not present any evidence, aside from her own conclusion, that would link the end of her employment with the district to her complaints either about her disability or her complaints about McClendon's sexual harassment. Again, as with her complaint for discrimination, plaintiff virtually ignores this claim in her opposition. Accordingly, she seems to have abandoned this claim by not opposing defendant's arguments. At oral argument, plaintiff was asked to show evidence that she was retaliated against. Even taking as true the evidence that plaintiff pointed out, at best she showed that she was terminated and denied benefits. She fails to show a causal connection between her termination and her complaints about McClendon's sexual harassment. Plaintiff has failed to make out a prima facie case of causation in her retaliation claim.

Accordingly, defendant's motion for summary judgment on Miller's retaliation claim is **GRANTED**, and the claim must be **DISMISSED**.

### 3.  SEXUAL HARASSMENT.

Plaintiff's final claim alleges sexual harassment under a hostile work environment theory. The critical issue is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). To make out a prima

facie case, plaintiff must show that a reasonable woman would find the work environment so objectively and subjectively hostile as to create an abusive work environment and that the defendant failed to take remedial and disciplinary action. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).

### A.   Objective and Subjective Hostility.

In her deposition, plaintiff testified that McClendon repeatedly "grabbed his crotch" in her presence, and kept her working late hours at his office with him such that she felt afraid to be alone with him. She also testified that McClendon attempted to sabotage her work and undermine her authority. On one occasion, he made a comment regarding her bra or breast size. Defendant points out that she did not testify in her deposition that his conduct was accompanied by sexually harassing words, comments, or requests for sexual favors. Despite this, plaintiff has made out a prima facie case that her work environment was hostile.

Defendant argues that these assertions of conduct are insufficiently connected with plaintiff's gender to constitute sexual harassment because McClendon made but one comment relating directly to plaintiff's gender. Defendant also contends that plaintiff's claim fails to show subjective indicia of a hostile work environment. Plaintiff testified that she did not perceive anything amiss in her work environment until after she began her full-time position. In its briefs, defendant interprets this as an indication that McClendon's conduct did not bother her. This argument fails because a reasonable trier of fact could conclude that McClendon's later conduct became more intense toward her, and thus rose to the level of a hostile work environment.

Considering the evidence in the light most favorable to plaintiff, a reasonably jury could conclude that McClendon's conduct so changed plaintiff's working conditions such that she experienced a hostile work environment. Thus, there exists a triable issue of fact as to whether Miller's working environment was hostile.

### B.   *Ellerth* Defense.

Defendant argues that it should be entitled to the *Ellerth* affirmative defense as a matter of law. This defense applies if no tangible employment action was taken. If the employer

13

exercised reasonable case to prevent and promptly correct any sexually-harassing behavior, and the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer, the defendant cannot be held liable. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Nichols v. Azteca Restaurants Enterprises, Inc.*, 256 F.3d 864, 877 (9th Cir. 2001).

First, as mentioned above, there is a triable issue of fact as to whether Miller was fired or resigned. Firing an employee is a tangible employment action. A reasonable trier of fact could determine that Ravenswood is not entitled to the *Ellerth* defense as a matter of law.

To show that they exercised reasonable care, defendant presents evidence that it had a policy regarding sexual harassment in place at the time Miller was hired. Miller testified that she did not know of the policy and that no district employee had ever told her about it. She admitted that she never made a formal complaint against McClendon, but this does not establish that Ravenswood exercised reasonable care or that Miller unreasonably failed to take advantage of corrective opportunities. Thus, drawing all reasonable inferences in favor of the non-moving party, there are material issues of triable fact as to the availability of the *Ellerth* defense. Accordingly, summary judgment as to plaintiff's claim for sexual harassment is **DENIED**.

## CONCLUSION

For all the above-stated reasons, defendant's motion for summary judgment is **GRANTED IN PART** as to plaintiff's claims of discrimination under Title VII and retaliation, and **DENIED IN PART** as to plaintiff's claim for sexual harassment.

**IT IS SO ORDERED.**

Dated: December 15, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14